CITY OF SHELBYVILLE, Kentucky ex rel SHELBYVILLE MUNICIPAL WATER AND SEWER COMMISSION, Appellant,

v.

COMMONWEALTH of Kentucky, NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Commonwealth of Kentucky, Department of Fish & Wildlife Resources, Appellees.

Court of Appeals of Kentucky.

March 21, 1986.

As Modified March 28, 1986.

Laurence J. Zielke, Michael W. Lowe, Henry M. Reed, III, Louisville, for appellant.

Kathryn M. Hargraves, Office of Gen. Counsel, Frankfort, for appellee Natural Resources and Environmental Protection Cabinet.

John S. Palmore, Henderson, David L. Armstrong, Atty. Gen., Penny R. Warren, Asst. Atty. Gen., Frankfort, for appellee Dept. of Fish and Wildlife Resources.

Before COMBS, DUNN and HOWARD, JJ.

HOWARD, Judge.

In this case, the City of Shelbyville *ex rel* Shelbyville Water and Sewer Commission appeals from an order of the Franklin Circuit Court denying its motion for summary judgment and dismissing its complaint. The appellant seeks to prevent the Natural Resources and Environmental Protection Cabinet from breaching the Guist Creek Reservoir Dam. The Commission claims that such action would eliminate the City's only water source. The appellant also seeks to have the Department of Fish

and Wildlife Resources reconstruct the dam to meet applicable safety standards.

In 1959, the Department of Fish and Wildlife Resources, in conjunction with the Shelby County Industrial and Development Foundation, aided in the construction of the Guist Creek Reservoir in Shelby County, Kentucky. The Foundation would raise funds to obtain the land needed and subsequently would transfer the land to Fish and Wildlife. The money for the actual construction of the dam came from the Governor's contingency fund. The reservoir was originally to be called Chandler Lake, but is now known as Guist Creek Reservoir or Lake.

Fish and Wildlife and the Foundation entered into a contract on May 4, 1960, in which the Department granted the Foundation certain rights and benefits in return for the property transferred to it by the Foundation. These rights and benefits included: (1) the exclusive right to construct, maintain and operate boat docks and other concessions on the reservoir; (2) the conveyance of a six-acre tract in the dam area to the Shelbyville Municipal Water and Sewer Commission for the construction of a water filtration system and water treatment plant; and (3) the right of the Foundation to take without charge "such quantities of water as may be required to supply the water needs of the residents of Shelby County." The Foundation, in addition, was to assume certain obligations under the contract, including the responsibility for maintenance and repair of the dam.

On January 31, 1966, the Foundation transferred by contract its rights under the 1960 agreement with the Department to the Shelbyville Water Commission. The Commission, in addition, assumed the Foundation's obligations under the 1960 contract.

In 1981, the Commission filed an application with the Division of Water and the Natural Resources Cabinet for a water withdrawal permit for amounts in excess of that previously required. The Commission also submitted plans for expanding the existing water treatment plant to handle the proposed increased capacity. On approximately January 8, 1982, Natural Resources approved the plans for expansion of the water treatment and on January 15, the Division of Water issued a water withdrawal permit.

Following an on-site inspection, Natural Resources informed the mayor of Shelbyville that the water withdrawal permit was being placed on hold and requested that work on the water treatment plant expansion be suspended. Natural Resources also stated certain spillway modifications and other reconstruction of the dam would be necessary. The reasons for the delay grew out of a 1978 United States Army Corps of Engineers report that classified the Guist Creek Dam as a high hazard structure. The regulations and standards followed by the Corps were incorporated, pursuant to KRS 151.293, in 401 KAR 4:030 in the mid-1970's. The reconstruction of the dam and other modifications were needed to achieve compliance with this regulation.

Following a request made by the Commission that the Fish and Wildlife effect the reconstruction and improvements required, the Department responded that, because the reservoir was of minimal value as a wildlife resource, the expenditure of its funds for reconstruction was questionable under the Kentucky Constitution and various statutes. However, Fish and Wildlife offered to contribute the lesser of 20% of the reconstruction cost or $250,000.

Natural Resources took the position that both Fish and Wildlife and the Commission were jointly responsible for the reconstruction and improvements. But the Cabinet also noted its authority to breach the dam to lower the reservoir water level if failure of the dam was likely due to weather or other conditions.

On December 7, 1983, the Commission filed suit in the Franklin Circuit Court, naming both the Natural Resources Cabinet and Fish and Wildlife as defendants. The Commission requested a declaration of rights concerning the ownership of the dam and the responsibility for its reconstruc-

tion. The Commission also sought injunctive relief requiring Fish and Wildlife to reconstruct the dam and directing Natural Resources to issue the necessary permits for water withdrawal and expansion of the water treatment plant.

On January 16, 1984, the Commission and Natural Resources agreed to an order of the trial court that resolved several issues raised in the complaint. Fish and Wildlife stated that it is the true owner of the dam, thus eliminating the disputed ownership. All three parties filed motions for summary judgment and the trial court ruled that no material fact remained in dispute. As a matter of law, it ruled in favor of the defendants, the Department of Fish and Wildlife and the Natural Resources Cabinet. The trial court reasoned that to require Fish and Wildlife to perform the reconstruction of the dam would violate Sections 50, 177 and 181 of the Kentucky Constitution and that the evidence did not otherwise support the Commission. Further, the trial court found that the claim of estoppel against Natural Resources and the Department of Fish and Wildlife was without merit.

The trial court denied the Commission's motion for summary judgment and dismissed its complaint. The cross-claim filed by the Natural Resources Cabinet against the Department of Fish and Wildlife was also dismissed.

The Commission's initial argument is that it relied in good faith on the actions and representations of the Department of Fish and Wildlife and Natural Resources concerning the continued availability usage of water from Guist Creek Reservoir, therefore under the principles of equitable estoppel, Fish and Wildlife must pay for the reconstruction of the dam.

The Commission concedes that the doctrine of equitable estoppel can only be invoked against a governmental agency under exceptional circumstances. *Urban Renewal and Community Development Agency of Louisville v. International Harvester Company*, Ky., 455 S.W.2d 69 (1970); *Maryland Casualty Company v.*

*Magoffin County Board of Education*, Ky., 358 S.W.2d 353 (1962). However, we do not find a Kentucky case that outlines exactly what constitutes such exceptional circumstances. The Commission maintains that the acts of any individual government agent are not the basis for the estoppel in the case at bar, but the official acts and acquiescence of Natural Resources and the Department of Fish and Wildlife as complete entities and the acts of every official employee of these agencies concerning the dam over several years serve as the basis for estoppel against the agencies.

We need not decide what circumstances are so exceptional that an equitable estoppel would work against a government agency because we have difficulty in the case at bar in finding that all the elements of equitable estoppel have been met.

In *Electric and Water Plant Board of the City of Frankfort v. Suburban Acres Development, Inc.*, Ky., 513 S.W.2d 489 (1974), the Court discussed the essential elements of equitable estoppel. These elements include: (1) conduct which amounts to false representation or concealment of material facts or at least which is calculated to convey the impression the circumstances are in a particular state that is inconsistent with the party's subsequent position; (2) the intention or expectation that such conduct shall influence the other party to act; and, (3) knowledge, constructive or actual, of the true facts. The party claiming the estoppel must show: (1) a lack of knowledge and of the means of knowledge of the true facts; (2) a good faith reliance on the words or conduct of the party to be estopped; and, (3) a detrimental change in position or status by the party claiming estoppel due to such reliance. *Id.* at 491.

■ We do not find, nor does the Commission point out, any statements or other conduct by Natural Resources or Fish and Wildlife that amount to a false representation or concealment of the facts from the Commission. The Commission argues that the Department had given the impression that the Guist Creek Dam was permanent

and that the Department would insure the dam's continuance. The question of permanency of the dam does not appear to have arisen until the Department refused the Commission's request to pay for the reconstruction of the dam in May of 1982. We find no evidence in the 1960 contract or elsewhere that the Fish and Wildlife ever stated that it would forever maintain the dam or perform any reconstruction of the dam.

■ Moreover, if the 1960 contract did contain any assurances involving perpetual duty of the Department to keep the dam in existence or could be construed to give such assurance, or had the Department made any such representations, then Subsections 50 and 177 of the Kentucky Constitution would be violated. *See McGuffey v. Hall*, Ky., 557 S.W.2d 401 (1977). The provisions prohibit any "transactions which might result in future liabilities against the general resources of the state. . . ." *Id.* at 411.

■ It is clear then that equitable estoppel would not apply in this case regardless of whether "exceptional circumstances" were present. Circumstances that are so exceptional as to allow equitable estoppel against a government agency, we think, must include some gross inequity between the parties. We do not find such inequity exists here.

KRS 151.297 gives Natural Resources the authority to force the owner of a dam to take such action as needed to render a potentially dangerous dam safe. Because we hold that equitable estoppel shall not be used against Natural Resources or the Department, Natural Resources is not required, as contended by the Commission, to order the Department of undertake the reconstruction.

■ In 1984, the Kentucky General Assembly "appropriated" $900,000 for the Guist Creek Dam. The Commission demands that Fish and Wildlife be forced to spend the money. The Commission does not make clear the grounds for its demand. However, Fish and Wildlife contends that the money cannot be used on the Guist Creek Dam because such expenditure would violate Subsection 181 of the Kentucky Constitution and KRS 150.150.

In *Miller v. State Building Commission*, 308 Ky. 249, 214 S.W.2d 265 (1948), the Court interpreted § 181 of the Kentucky Constitution to prohibit the use of money raised by state taxes to be used for a purely local purpose for the benefit of the inhabitants of a particular municipality. However, such funds may be appropriated for expenditure in a particular locality if there is a public purpose benefitting the state in general.

The Commission argues that the purpose of the expenditure would be of a general nature because it is essential to the health and welfare of the citizens of Shelbyville and the lake is heavily used for recreational purposes by persons from many parts of the State.

The authorities cited by the Commission holding that hospitals, police departments, and fire departments, etc., are not purely local concerns are not as persuasive as the Commission suggests. For example, in *Miller, supra*, the Court held that an appropriation to a state agency in order that it may aid municipalities in areas including the attainment of funding for the construction of hospitals is a general purpose, not local, under § 181. In *Board of Trustees of Policemen's and Firemen's Retirement Fund v. City of Paducah*, Ky., 333 S.W.2d 515 (1960), the Court held that a requirement by the general assembly for second-class cities to contribute to a pension fund for their police and fire departments was a general purpose under § 181. However, neither of these cases, nor any cited by the Commission, deal with an appropriation to a specific entity such as a particular hospital or police department.

We think that because the expenditure of the $900,000 is primarily for the benefit of the residents of Shelbyville and the city itself, a purely local purpose, the appropriation violates § 181.

■ The Department of Fish and Wildlife is further prohibited from spending the $900,000 by KRS 150.150. The evidence shows that the money "appropriated" by the legislature in fact came from Fish and Wildlife agency funds. KRS 150.150 provides that such agency funds shall only be used for the purposes of chapter 150 or for the regulation or protection of fish, birds or wild animals. Fish and Wildlife stated that it would serve no fishing or wildlife purpose to reconstruct the dam. Thus, clearly the $900,000 cannot be used for the reconstruction of the Guist Creek dam.

■ The Commission also argues that Natural Resources holds the Guist Creek Dam and all water resources in trust for the Commonwealth and thus should be directed to order Fish and Wildlife to do the reconstruction. The Commission cites no authority for its trust concept but cities extensively from the Commonwealth's water policy stated in KRS 151.110. Because the dam will not be reconstructed, the Commission claims that water resources will be wasted. However, even if we were to find such a trust, we do not believe that refusal to reconstruct a dam so that a city can expand its water plant is a waste of water resources.

The judgment is affirmed.

All concur.